IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREA YOUNG,** *et al.*,  <br><br>  Plaintiffs,  <br><br>  v.  <br><br> **ALEX M. AZAR II,** *et al.*,  <br><br>  Defendants. | Civil Action No. 1:19-cv-3526 (JEB) |

**FEDERAL DEFENDANTS' BRIEF IN RESPONSE TO THE
COURT'S JANUARY 14, 2020 ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.  The Healthy Michigan Plan ("HMP") ........................................................................ 3

    B.  Procedural History ....................................................................................................... 5

ARGUMENT ......................................................................................................................... 8

    I.    The Federal Defendants Incorporate By Reference Arguments Presented In Their Prior Briefs In The Related Cases. .................................................................... 8

    II.   While The Secretary's 2018 Approval Should Be Remanded To The Agency, HMP's Components Other Than Work And Community Engagement Should Not Be Vacated. ........................................................................................................ 8

    III.  In The Alternative, Consideration Of HMP's Longstanding Components Should Be Stayed Pending Appellate Proceedings In Related Cases Vacated .......................... 12

CONCLUSION ..................................................................................................................... 13

**INTRODUCTION**

In *Gresham v. Azar*, 2020 WL 741278 (D.C. Cir. Feb. 14, 2020), the D.C. Circuit affirmed this Court's decision vacating Arkansas's section 1115 Medicaid demonstration project. The D.C. Circuit's opinion did not reject any of the reasoning advanced in this Court's earlier *Gresham* opinion. *See* 363 F. Supp. 3d 165 (D.D.C. 2019). Nor did it reject the reasoning of this Court's opinion in *Stewart v. Azar*, 366 F. Supp. 3d 125 (D.D.C. 2019).

The federal defendants have already stated that, "under the reasoning of this Court's decision in *Stewart v. Azar*, 366 F. Supp. 3d 125 (D.D.C. 2019), as incorporated into *Gresham v. Azar*, 363 F. Supp. 3d 165, 181 (D.D.C. 2019), the Secretary's approval of the work and community engagement component of the Healthy Michigan Plan ("HMP") is not materially different from the approval of the work and community engagement components challenged in *Stewart* and *Gresham*." Notice By Fed. Defs., ECF No. 16 at 2. While the federal defendants continue to disagree with this Court's decisions in *Stewart* and *Gresham*, they acknowledge that, under those decisions, HHS' approval of HMP's work and community engagement component is unlawful.

This leaves the question of remedy. Under the State's implementation of HMP, beneficiaries may have their coverage terminated due to noncompliance with the work and community engagement requirement starting as early as June 1, 2020. In both *Stewart* (where similar consequences were set to begin shortly) and *Gresham* (where such disenrollments had already begun), this Court vacated the challenged programs as a whole. However, unlike *Stewart* and *Gresham*, here HMP's active components *other than* work and community engagement have been longstanding and will not directly result in any beneficiary losing Medicaid coverage. While demonstrations must be judged as a whole, and courts cannot refashion a demonstration approved by the Secretary, the Court possesses discretion to tailor any remedy to the specific circumstances of the case before it. Thus, even conceding that this Court must remand the demonstration approval back to the Secretary in light of its decisions in *Stewart* and

1

*Gresham*, the appropriate remedy here is to avoid unnecessary disruption and allow HMP's longstanding components to continue during the remand.

Indeed, like Indiana's Medicaid demonstration in *Rose v. Azar*, Civ. No. 1:19-cv-2848 (D.D.C.), HMP includes several enduring components, which CMS approved long before the 2018 approval and which have been in place in Michigan—unchallenged—since 2014. These include premium and copayment requirements; a Michigan Health Account, which tracks beneficiary contributions and how they are spent; and a healthy behaviors component, which provides a way for beneficiaries to earn reductions in their premiums and copayments through actions like obtaining vaccinations or preventative screenings. Importantly, as originally approved, none of these components were conditions of eligibility. A beneficiary's failure to comply with them would not result in termination of coverage. And while that latest approval has, for a subgroup of beneficiaries, made payment of premiums and completion of either a survey about health risks or certain healthy behaviors conditions of eligibility, Michigan's governor has delayed implementation of those changes through October 1, 2020.

As a result, if the community engagement component is vacated, Plaintiffs' coverage will not be conditioned on compliance with the remaining components until, at the earliest, October 1, 2020. And even then, only a subset of beneficiaries—those with incomes over 100% of the federal poverty line ("FPL") and who have been HMP beneficiaries for at least 48 cumulative months—would have payment of premiums and the completion of either a survey or certain healthy behaviors become conditions of eligibility.

In short, there is no immediate need to vacate the remaining components of HMP. In fact, doing so would upset the more than half-decade status quo in Michigan. Instead, while the Secretary's entire amendment and extension of HMP should be remanded to the agency, only the work and

2

community engagement component should be subject to potential vacatur. The remaining components of HMP, by contrast, should remain in effect.

On remand, the Secretary would decide whether to re-approve HMP without community engagement and without the changes related to premiums, the health risk survey, and healthy behaviors that, as of now, are delayed until October 1, 2020. In other words, the Secretary on remand would consider whether to re-approve the demonstration in such a way as to both preserve the status quo and ensure that the demonstration's impacts on coverage are consistent with advancing the objectives of Medicaid—the latter of which this Court repeatedly has identified as the primary consideration in evaluating Medicaid demonstration projects.

Alternatively, the Court should simply stay its consideration of HMP's remaining components—those other than work and community engagement—pending appellate proceedings in related cases. In *Gresham*, the Solicitor General is currently considering whether to seek further review, and, in *Philbrick*, the D.C. Circuit has ordered the parties to file motions to govern further proceedings by March 16, 2020. Consequently, this Court may yet receive further guidance from the D.C. Circuit or Supreme Court before there is any immediate need to address the remaining components of HMP.

## FACTUAL BACKGROUND

### A. The Healthy Michigan Plan ("HMP")

In late 2013, the Centers for Medicare & Medicaid Services ("CMS") approved a Section 1115 demonstration project in Michigan to accompany the State's expansion of the Medicaid program to cover the "new adult group."[1] *See* AR 3934. That project, the Healthy Michigan Plan ("HMP"), coupled Michigan's provision of health care coverage for the new adult group with several features

---

[1] The "new adult group" consists of adults aged between 19-64 whose household income is no more than 133% of the federal poverty line, who are not also eligible for Medicare, and who do not otherwise fall within one of the other eligibility groups listed in 42 U.S.C. § 1396a(a)(10)(A)(i). *See* 42 U.S.C. § 1396a(a)(10)(A)(i)(VIII) and 42 C.F.R. § 435.119.

pertaining to this newly eligible population, including a monthly premium requirement for those with incomes more than 100% of FPL; copayments; a "MI Health Account," which allows beneficiaries to track their premiums and copayments and how they are spent; and a healthy-behaviors incentive program, which provides a mechanism for beneficiaries to earn reductions in premiums and copayments by completing qualifying healthy behaviors, such as "annual preventive visits, receiving appropriate vaccines, and a number of preventive screenings." Approval Letter, AR 4–5.  As initially approved by CMS, none of these requirements were conditions of eligibility. *See* Letter from Marilyn Tavenner to Stephen Fitton (Dec. 30, 2013), https://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Waivers/1115/downloads/mi/Healthy-Michigan/mi-healthy-michigan-cms-amend-appvl-12302013.pdf.

In September 2018, Michigan submitted an application to extend HMP for five additional years, with certain modifications. *See* AR 8101. In December 2018, CMS approved HMP's extension and modifications, effective January 1, 2020.[2] AR 2–18. In particular, the Secretary approved (1) a requirement for certain beneficiaries to perform 80 hours per month of work and community engagement; and (2) to make premium payments and completion of either a "Health Risk Assessment" survey or certain healthy behaviors conditions of eligibility for a subgroup of beneficiaries—members of the new adult group who had been HMP beneficiaries for 48 months and whose income was above 100% of FPL. *See* AR 5–6; *see also* Special Terms and Conditions ("STCs"), AR 33–37. However, Michigan's governor subsequently delayed through October 1, 2020 implementation of the changes to the premiums and healthy behaviors requirement and the new health

---

[2] CMS did not approve two components of Michigan's 2018 application: demonstration authority to impose (1) "a one year non-eligibility period on beneficiaries who are found to have misrepresented their compliance with the community engagement requirement" and (2) "escalating healthy behaviors as a condition of eligibility for beneficiaries with income above 100 percent of the FPL through 133 percent of the FPL who have been enrolled in HMP for 48 or more cumulative months." AR 6.

risk survey (for the population they affected). *See Governor Signs Bill to Improve Compliance with Medicaid Work Requirement, Delays Other Changes*, Michigan Health and Hospital Association (Sept. 24, 2019), https://mha.org/Newsroom/ID/2129/Governor-Signs-Bill-to-Improve-Compliance-with-Medicaid-Work-Requirement-Delays-Other-Changes. Consequently, through at least October 1, 2020, the only component of HMP on which eligibility is conditioned for any beneficiary is the work and community engagement requirement.

The following groups are generally considered exempt from the work and community engagement requirement: pregnant women, primary caregivers of a family member under six years of age (limited to one caregiver per household), caretakers of a dependent with a disability who needs full-time care (allowed for one enrollee per household if there is only one dependent with a disability who meets the criteria specified above in the household); caretakers of an incapacitated individual even if the incapacitated individual is not a dependent of the caretaker; beneficiaries considered medically frail; beneficiaries currently receiving temporary or permanent long-term disability benefits from a private insurer or from the government; beneficiaries diagnosed with an acute medical condition that would prevent them from complying with the requirements; beneficiaries who have been incarcerated within the last six months; beneficiaries currently receiving unemployment benefits from the state; beneficiaries with a disability under the Americans with Disabilities Act, section 504 of the Rehabilitation Act, or section 1557 of the ACA who is unable to meet the requirement due to a disability; beneficiaries under 21 years of age who had previously been in foster care placement in this state; and full-time students. AR 5; *see also* AR 40. Beneficiaries can re-enroll after demonstrating good cause for prior noncompliance or completing 80 hours of work or community engagement in any particular month. AR 5.

### B. Procedural History

The Secretary's approval of work and community engagement components as part of

Medicaid demonstration projects has been the subject of prior litigation before this Court. This Court has ruled on such approvals in Kentucky, Arkansas, and New Hampshire. *See Stewart v. Azar*, 366 F. Supp. 3d 125 (D.D.C. 2019) (*Stewart II*); *Gresham v. Azar*, 363 F. Supp. 3d 165, 171 (D.D.C. 2019); *Philbrick v. Azar*, 397 F. Supp. 3d 11 (D.D.C. 2019). In Kentucky, the first case of its kind, this Court vacated and remanded the Secretary's original approval of the State's work and community engagement requirements, in which the Secretary concluded that the requirements would further the objectives of Medicaid because they were likely to improve beneficiary health outcomes. *Stewart v. Azar*, 313 F. Supp. 3d 237, 266 (D.D.C. 2018) (*Stewart I*). On remand, the Secretary re-approved the project on an additional basis, reasoning that Section 1115 provides authority for him to approve projects that, like Kentucky's, permit "states to maintain the long-term fiscal sustainability of their Medicaid programs and to provide more medical services to more Medicaid beneficiaries." *Stewart II*, 366 F. Supp. 3d at 134. The Court again concluded that the Secretary's approval was arbitrary and capricious and again vacated Kentucky's project. *Id.* at 134. It likewise vacated Arkansas's and New Hampshire's projects. *Gresham*, 363 F. Supp. 3d 165; *Philbrick*, 397 F. Supp. 3d 11. The Government appealed this Court's rulings in all three cases.

On November 22, 2019, Plaintiffs filed this lawsuit, challenging the Secretary's 2018 extension and amendment of the HMP project. *See* Compl., ECF No. 1. In particular, Plaintiffs challenge the following aspects of the approval: (1) the work and community engagement component; (2) the premium and cost-sharing requirements; and (3) the healthy behavior requirements. *See* Compl. ¶¶ 222–43. Plaintiffs also challenge the project as a whole, as well as a State Medicaid Director letter that HHS issued in January 2018. *Id.* ¶¶ 208–21. And they assert a claim under the Take Care Clause. *Id.* ¶¶ 244–61.

This Court subsequently instructed the parties to indicate whether they believe that "the approval of Michigan's work and community engagement requirements is materially different from

6

that of Kentucky's or Arkansas's" and whether "a D.C. Circuit merits affirmance in the Arkansas case would necessarily bar the work and community engagement requirements here." *See* Order, ECF No. 14. This Court further instructed that the federal defendants shall file any brief by February 25, 2020—later extended to March 3, 2020—explaining why "the approval of Michigan's work and community engagement requirements is materially different" and/or why even if it is not different, "other challenged components of the Healthy Michigan Plan should not be struck down in the event the D.C. Circuit affirms this Court's ruling on the Arkansas approval." *Id.*

The federal defendants thereafter notified this Court that, under the reasoning of this Court's decision in *Stewart*, as incorporated into *Gresham*, the Secretary's approval of the work and community engagement component of HMP is not materially different from the approval of the work and community engagement components challenged in *Stewart* and *Gresham*. Fed. Defs.' Notice, ECF 16.

On February 14, 2020, the D.C. Circuit issued its opinion in *Gresham v. Azar*.[3] The court affirmed this Court's conclusion that the Secretary's approval of Arkansas's 2018 demonstration project was arbitrary and capricious.

On February 24, 2020, the Michigan Department of Health and Human Services ("Michigan" or "the State") filed a motion for partial summary judgment, arguing that the Secretary's approval of HMP's work and community engagement requirement was unlawful, and requesting an expedited ruling solely addressing that component. Intervenor's Expedited Mot. for Partial Summ. J., ECF No. 22. The federal defendants stated that they would provide their position on Michigan's motion in this brief. *Id.* at 1 n.1.

---

[3] The federal defendants appealed this Court's decision in *Stewart* around the same time as *Gresham*, and the cases were consolidated. However, Kentucky terminated the challenged demonstration project and moved for voluntary dismissal of its appeal, which the D.C. Circuit granted. *See Gresham*, 2020 WL 741278, at *1.

7

# ARGUMENT

## I. The Federal Defendants Incorporate By Reference Arguments Presented In Their Prior Briefs In The Related Cases.

In accord with this Court's direction not to brief arguments that previously have been raised but rejected by the Court, the federal defendants incorporate here the arguments raised in their prior briefs in related cases, including in *Stewart*, *Gresham*, and *Philbrick*. *See* Mem., *Stewart* ECF No. 107; Reply, *Stewart* ECF No. 122; Mem., *Gresham* ECF No. 37-1; Reply, *Gresham* ECF No. 52; Mem., *Philbrick* ECF No. 30-1; Reply, *Philbrick* ECF No. 38. Those arguments include, among other things, that the Secretary's approvals of Section 1115 demonstration projects are unreviewable or, at most, subject to highly deferential review; that promoting health and independence are permissible purposes of Medicaid demonstration projects; that promoting the sustainability of a state's Medicaid program by transitioning beneficiaries to commercial coverage furthers the program's ability to provide coverage; that the Secretary is not required to attempt to quantify the expected results of a demonstration before it has occurred; that beneficiaries only possess standing to challenge the project components that directly injure them; and that any relief should be limited to only the plaintiffs before the Court and only the project components that have injured those plaintiffs. The federal defendants acknowledge that the Court has previously rejected these and the other arguments raised in prior briefs, so the federal defendants note them here for purposes of preservation only.

## II. While The Secretary's 2018 Approval Should Be Remanded To The Agency, HMP's Components Other Than Work And Community Engagement Should Not Be Vacated.

As noted above, although the federal defendants disagree with this Court's decisions in *Stewart* and *Gresham*, they agree with Michigan that, under the reasoning of those decisions, HHS's approval of HMP's work and community engagement requirement is unlawful. *See* MI's Mot. for Partial S.J., ECF No. 22. As a result, the Secretary's 2018 approval of HMP's amendment and extension should

be remanded to the agency. However, that remand should be accompanied, at most, by only a partial vacatur.

Partial vacatur of agency action is a commonly ordered remedy in this circuit. *See, e.g.*, *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 79 (D.D.C. 2010) ("The Court finds that the appropriate remedy is remand along with a partial vacatur."). Such a remedy is particularly appropriate where only part of an agency action is clearly deficient, and there are compelling reasons to keep other parts of the action in effect during a remand. *See S. Coast Air Quality Mgmt. Dist. v. E.P.A.*, 489 F.3d 1245, 1248 (D.C. Cir. 2007) ("[C]omplete vacatur of a partially valid rule would only serve to stall progress where it is most needed.").

Here, in light of the fact that beneficiaries may lose coverage for noncompliance with community engagement beginning June 1, 2020, the federal defendants acknowledge that, under the reasoning of this Court's prior decisions, HMP's work and community engagement component may be subject to vacatur. However, the same does not hold true for HMP's other active components, which are longstanding in the State of Michigan and do not directly result in any beneficiary losing Medicaid coverage. Indeed, HMP's premium and copayment requirements, its "MI Health Account", and its healthy-behaviors incentive program all have been in effect in Michigan since 2014. And critically, for all of that time, they have not been conditions of eligibility—*i.e.*, if a beneficiary fails to comply with these components (such as by not paying required premiums), the beneficiary's coverage would not be subject to suspension. It was only in the Secretary's 2018 approval that Michigan gained the authority—for the subgroup of beneficiaries who have received coverage from HMP for at least 48 cumulative months and whose incomes are greater than 100 percent of FPL—to condition eligibility on payment of premiums and completion of either a survey about health risks or certain qualifying healthy behaviors. Yet the State has announced that those new changes related to premiums, the health survey, and the healthy behaviors program have been delayed through October 1, 2020.

Accordingly, through at least October 1, 2020, beneficiaries in Michigan will not have their Medicaid coverage conditioned on any components other than community engagement. In other words, apart from work and community engagement, there is no immediate cause to upset the status quo and vacate the remaining, longstanding components of HMP.

On remand, the Secretary would then consider whether to re-approve the demonstration without work and community engagement and whether to make any changes, including to demonstration components that experienced modifications in 2018 that are now delayed through October 1, 2020. If the Secretary re-approves the demonstration without community engagement or the 2018 modifications, plaintiffs can then decide whether they still desire to challenge HMP's longstanding components, despite the fact that they previously did not do so for the approximately six years those components have been in effect. Alternatively, if the Secretary decides to re-approve the demonstration without community engagement but with the 2018 modifications, likewise the plaintiffs then can decide whether they still desire to press their challenge.

In light of the above, a remedy of remand with partial vacatur is warranted. The approval's "deficiencies" could easily be cured on remand, and complete vacatur would result in highly "disruptive consequences of an interim change that may itself be changed." *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). To start with, this Court previously has identified effects on coverage as the primary consideration in evaluating whether section 1115 Medicaid demonstration projects are likely to assist in promoting the objectives of Medicaid. *See Stewart II*, 366 F. Supp. 3d at 139–40. If the Secretary re-approves Michigan's demonstration without work and community engagement and the 2018 modifications, the resulting demonstration would contain no components on which coverage is conditioned. Thus, any "deficiencies" in the most recent approval of HMP are not "serious" because they could be squarely addressed on remand by the Secretary simply excluding the newly approved components on which plaintiffs focus. And although

10

plaintiffs allege that many of HIP's components are independently unlawful, *see* Compl. ¶¶ 222–243, neither this Court nor the D.C. Circuit has addressed the merits of components like premiums, which have been deployed in state demonstration projects across the country for years. Simply put, the changes to HMP approved in 2018—including community engagement—should not be treated as a hook to vacate longstanding components when the purpose of remand would be to consider whether to re-approve the demonstration precisely without those 2018 changes.

At the same time, if the Court were to vacate HMP as a whole, longstanding components would lose effect while the Secretary considers whether to re-approve those exact components. This could create serious confusion for beneficiaries and disruption for the State: for example, HMP's premium requirement would end, only to be potentially re-approved in short order in a different version of the project, leaving beneficiaries and Medicaid administrative officials in Michigan struggling to keep up with the shifting state of conditions on Medicaid coverage. *See, e.g.*, *Defs. of Wildlife v. Jackson*, 791 F.Supp.2d 96, 119 (D.D.C. 2011) (remanding deficient agency action without vacatur because the action "at issue is in effect" and "vacatur would cause significant disruption"). Indeed, the State has explained that in the event HMP is vacated in full, it would be forced to "develop[] a new program to provide Medicaid benefits to over 650,000 individuals and otherwise manag[e] the fall-out from the elimination of a program that has been in place for over five years." MI's Mot. to Intervene, ECF No. 20.

In sum, while all of HMP should be remanded to the agency in light of the reasoning in this Court's prior decisions, longstanding components other than work and community engagement

should not be vacated. At most, this Court should order a partial vacatur, limited to work and community engagement.[4]

### III. In The Alternative, Consideration Of HMP's Longstanding Components Should Be Stayed Pending Appellate Proceedings In Related Cases.

If the Court is not inclined to remand the Secretary's approval of HMP with only a partial vacatur, then it should vacate the work and community engagement component but stay its consideration of other components pending further proceedings in the D.C. Circuit and, potentially, the Supreme Court.

This Court has the inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Pursuant to that authority, district courts routinely stay proceedings where resolution of appellate proceedings in other matters may provide guidance to the district court in deciding issues before it. *See id.* at 254; *see, e.g.*, *Fed. Home Loan Mortg. Corp. v. Kama*, 2016 WL 922780, at *8-*9 (D. Haw. Mar. 9, 2016) (granting stay where circuit court's resolution of related cases "w[ould] likely involve an analysis of" issues that would "provide further guidance" to the district court). Doing so not only preserves resources for both the parties and the court, but also "reduce[s] the risk of inconsistent rulings that the appellate court[] might then need to disentangle." *Washington v. Trump*, 2017 WL 1050354, at *5 (W.D. Wash. Mar. 17, 2017) (citation omitted).

In *Gresham*, the D.C. Circuit issued its decision on February 14, 2020, and the Solicitor General is currently considering whether to seek further review. And in the appeal of *Philbrick*—which previously was held in abeyance pending the decision in *Gresham*—the D.C. Circuit has ordered the

---

[4] If the Court is inclined to vacate more than just the work and community engagement component, then, at most, it should vacate community engagement along with the 2018 modifications to HMP that are delayed through October 1, 2020. In all events, the Court should leave in effect the currently active components that predate the 2018 approval.

12

parties to file motions to govern further proceedings by March 16, 2020. *See* Order, *Philbrick v. Azar*, No. 19-5293 (D.C. Circuit February 14, 2020). In light of these circumstances, it is possible that this Court may receive further appellate guidance before it faces any immediate need to address the longstanding components of HMP. It would thus promote judicial economy to refrain from ruling on the non-work and community engagement components of HMP at this time. And, as explained above, no beneficiary in Michigan will have their Medicaid coverage conditioned on these remaining components until, at the earliest, October 1, 2020—and only then for a subgroup of beneficiaries. Given these circumstances, the Court should preserve the status quo by holding in abeyance its consideration of HMP's longstanding components pending further proceedings in *Gresham* and *Philbrick*.

## CONCLUSION

While the federal defendants concede that the Secretary's approval should be remanded to the agency under this Court's prior decisions, such remand should be accompanied by, at most, a partial vacatur encompassing only the work and community engagement component. In the alternative, this Court should stay its consideration of longstanding components other than work and community engagement pending any future appellate proceedings in *Gresham* and *Philbrick*.

Dated: March 3, 2020

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Matthew Skurnik*
MATTHEW SKURNIK (NY 5553896)
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice

        Civil Division, Federal Programs Branch
        1100 L Street, N.W.
        Washington, DC 20005
        Tel: (202) 616-8188
        Email: Matthew.Skurnik@usdoj.gov

*Counsel for the Federal Defendants*